UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MICHAEL J. SCALZI,

                Plaintiff,

    v.

CITY OF NORTH LAS VEGAS,

                Defendant.

Case No. 2:08-cv-01399-MMD-VCF

ORDER

(Def.'s Motion for Summary Judgment
– dkt. no. 84;
Plf.'s Motion for Summary Judgment
– dkt. no. 87)

I.    **SUMMARY**

      Before the Court are the competing summary judgment motions of Defendant City of North Las Vegas and Plaintiff Michael J. Scalzi.  (*See* dkt. nos. 84 and 87.)

II.    **BACKGROUND**

      Scalzi brought this action challenging as discriminatory the City of North Las Vegas's ("City") failure to promote him for a senior position he applied for and challenging his subsequent termination.  Before describing the underlying facts giving rise to Scalzi's action, a brief summary of the City's governance structure is warranted.

      The City is governed through a five-member City Council that establishes the City's general policies.  The Council hires a City Manager charged with operating the City on a day-to-day basis.  The City Manager appoints on an at-will basis various assistants, department directors, and assistant directors.  Among these positions is the Director of Human Resources, which "leads the Human Resources Department in all areas, including recruitment and selection, compensation and classification, labor and

1   employee relations, training and development, safety and worker's compensation." (Dkt.
2   no. 85-A.)

3         In early 2005, Scalzi applied for the open Director of Human Resources position,
4   but then-City Manager Gregory Rose selected another male individual instead.   On
5   December 5, 2005, Rose hired Scalzi as the Labor Relations Manager tasked to
6   "manage, supervise, and coordinate the labor relations function for the City and perform
7   related duties as necessary." (Dkt. nos. 85-D and 85-E.)  At the time of his selection as
8   the Labor Relations Manager, Scalzi had no public sector human resources experience.

9         In 2006, the Director of Human Resources resigned, and the City Manager named
10  Scalzi as the Acting Director while a nationwide executive recruitment was conducted by
11  an outside search firm.  Twelve (12) candidates were forwarded to the City for
12  consideration, and two were selected as final candidates after interviews.  Scalzi was
13  one of the finalists, along with Joyce Lira.  Lira was ultimately selected for the position.
14  Scalzi alleges that he failed to receive the position on account of his male gender, and
15  accuses Lira of being less qualified than he.

16        Eight weeks into Lira's hiring, Scalzi was reclassified from Labor Relations
17  Manager to Chief Labor Relations Manager, and received a pay increase.  (*See* dkt. no.
18  86-H.)   The City alleges, however, that Scalzi began to experience difficulty in
19  performing his job functions, and was the subject of complaints from staff regarding
20  unprofessional behavior.  Scalzi disputes this fact, and challenges Lira's characterization
21  of his performance.   In support of this allegation, the City appends a letter from an
22  outside team-building consultant noting that Scalzi did not promote the human resources
23  department's goals of teamwork and professionalism, and recommending that he "be
24  held accountable for management expectations of behavior that support teamwork and
25  communication" as well as "behaviors that demonstrate impartiality and professionalism
26  and behaviors that demonstrate a desire to help resolve the issues within the
27  organization." (*See* dkt. no. 86-J.)
28  ///

On June 14, 2007, an official from Teamsters Local Union No. 14 wrote to Lira informing the City that due to unprofessional conduct, the union would no longer recognize Scalzi as the City's designee and noted that the union believed Scalzi "undermined the actions you [Lira] and I agreed to take" and thereby "called his credibility into question with this Local Union." (Dkt. no. 86-K.)  On June 26, 2007, Lira wrote to Scalzi formally notifying him that he was suspended for two days without pay. (Dkt. no. 86-L.)  Lira noted a number of reasons for the suspension, including complaints about Scalzi from staff, insubordinate behavior, and failure to resolve grievances with the Teamsters.  The letter was intended as a "last chance," and informed Scalzi that "[f]ailure to meet the expectations outlined [in the letter] will result in your immediate dismissal from the City of North Las Vegas." (*Id.* at 2.)  Scalzi failed to acknowledge and accept the "last chance" letter, and was terminated the following day.  (Dkt. no. 86-M.)

On July 19, 2007, Scalzi completed a charge against the City of North Las Vegas with the Nevada Equal Rights Commission, alleging sex and age discrimination as well as retaliation.  (Dkt. no. 86-N.)

Thereafter, Scalzi commenced this action on September 18, 2008, in the Eighth Judicial District Court of Clark County, Nevada.  (Dkt. no. 1-1.)  The City removed the case to this Court on October 15, 2008, and answered the Complaint the same day. (*See* dkt. nos. 1 and 2.)  Scalzi filed his Amended Complaint on May 13, 2009.  Upon City's Motion, the Court dismissed Scalzi's claim for violation of NRS § 281.645, but ruled that Scalzi stated a claim for sex discrimination and retaliation.   (Dkt. no. 32.) Scalzi subsequently filed a Second Amended Complaint ("SAC") on February 19, 2010, alleging one claim of gender discrimination in violation of Title VII of the Civil Rights Act of 1964 and re-alleging his NRS § 281.645 claim.  (Dkt. no. 50.)  The City answered, and filed a counterclaim against Scalzi for breach of his duty of loyalty.  (Dkt. no. 54.)

Upon the close of discovery, both Scalzi and the City timely filed competing Motions for Summary Judgment.  (Dkt. nos. 84 and 87.)

///

1    III.    **LEGAL STANDARD**

2          The purpose of summary judgment is to avoid unnecessary trials when there is no

3    dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

4    F.3d 1468, 1471 (9th Cir. 1994).  Summary judgment is appropriate when the pleadings,

5    the discovery and disclosure materials on file, and any affidavits "show there is no

6    genuine issue as to any material fact and that the movant is entitled to judgment as a

7    matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  An issue is "genuine"

8    if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for

9    the nonmoving party and a dispute is "material" if it could affect the outcome of the suit

10   under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

11   Where reasonable minds could differ on the material facts at issue, however, summary

12   judgment is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

13   1995).  "The amount of evidence necessary to raise a genuine issue of material fact is

14   enough 'to require a jury or judge to resolve the parties' differing versions of the truth at

15   trial.'"  *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l*

16   *Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)).  In evaluating a summary

17   judgment motion, a court views all facts and draws all inferences in the light most

18   favorable to the nonmoving party.  *Kaiser Cement Corp. v.  Fishbach & Moore, Inc.*, 793

19   F.2d 1100, 1103 (9th Cir. 1986).

20         The moving party bears the burden of showing that there are no genuine issues

21   of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).  "In

22   order to carry its burden of production, the moving party must either produce evidence

23   negating an essential element of the nonmoving party's claim or defense or show that

24   the nonmoving party does not have enough evidence of an essential element to carry its

25   ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210

26   F.3d 1099, 1102 (9th Cir. 2000).   Once the moving party satisfies Rule 56's

27   requirements, the burden shifts to the party resisting the motion to "set forth specific

28   facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  The

1    nonmoving party "may not rely on denials in the pleadings but must produce specific

2    evidence, through affidavits or admissible discovery material, to show that the dispute

3    exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do

4    more than simply show that there is some metaphysical doubt as to the material facts."

5    *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The

6    mere existence of a scintilla of evidence in support of the plaintiff's position will be

7    insufficient." *Anderson*, 477 U.S. at 252.

8         Further, "when parties submit cross-motions for summary judgment, '[e]ach

9    motion must be considered on its own merits.'" *Fair Hous. Council of Riverside County,*

10   *Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (*quoting* William W.

11   Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D.

12   441, 499 (Feb. 1992) (citations omitted).  "In fulfilling its duty to review each cross-motion

13   separately, the court must review the evidence submitted in support of each cross-

14   motion." *Id.*

15   **IV.   DISCUSSION**

16        The summary judgment motions before this Court relate only to Scalzi's gender

17   discrimination claim, Scalzi's state whistleblower claim, and the City's breach of the duty

18   of loyalty counterclaim.   In his Response to the City's Motion, Scalzi consented to

19   dismissal of his Title VII retaliation.[1]  The Court discusses each in turn.

20        **A.   Title VII Sex Discrimination**

21        Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge

22   any individual, or otherwise to discriminate against any individual with respect to his

23   compensation, terms, conditions, or privileges of employment, because of such

24   individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  "A

25   _____

26        [1]Curiously, Scalzi's Reply in support of his Motion for Summary Judgment argues
     that the City failed to hire him because of his whistleblowing activities (*see* dkt. no. 100
27   at 4), a claim he directly refused to pursue in his Response to the City's Motion (*see* dkt.
     no. 97 at 15-16).  He does not seek summary judgment on any retaliation (*see generally*
     dkt. no. 87), and the Court does not address them.

28

1  plaintiff in a Title VII case must establish a prima facie case of discrimination."  *Cordova*
2  *v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997).  "If the plaintiff succeeds in
3  doing so, then the burden shifts to the defendant to articulate a legitimate,
4  nondiscriminatory reason for its employment decision."  *Id.*  "If the defendant provides
5  such a reason, then in order to prevail, the plaintiff must demonstrate that this reason is
6  pretextual."  *Id.*

### 1.    Prima Facie Case

8        In order to establish a prima facie case of gender discrimination, the plaintiff must
9  produce evidence that "give[s] rise to an inference of unlawful discrimination."  *Tex. Dep't*
10  *of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  Where, as here, no evidence
11  of direct discriminatory intent is presented, a plaintiff may create a presumption of
12  discriminatory intent through the factors set out in *McDonnell Douglas Corp. v. Green*,
13  411 U.S. 792, 802 (1973).  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)
14  (citation omitted).  The four prong *McDonnell Douglas* test requires that a plaintiff show
15  "that (1) she belongs to a protected class; (2) she applied for and was qualified for the
16  position she was denied; (3) she was rejected despite her qualifications; and (4) the
17  employer filled the position with an employee not of plaintiff's class, or continued to
18  consider other applicants whose qualifications were comparable to plaintiff's after
19  rejecting plaintiff."  *Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027, 1037 (9th
20  Cir. 2005) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802)).  "The requisite degree of
21  proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is
22  minimal and does not even need to rise to the level of a preponderance of the evidence."
23  *Id.*; *see also Sischo-Nownejad v. Merced Cmty. Coll. Dist.,* 934 F.2d 1104, 1111 (9th Cir.
24  1991) ("[T]he amount [of evidence] that must be produced in order to create a *prima*
25  *facie* case is 'very little.'").

26        Although the evidence is scarce, Scalzi provides enough to make a *prima facie*
27  showing of discrimination.  He belongs to a protected class, he applied for and was
28  denied a position he sought, he was qualified for the position by virtue of his status as a

1    finalist in the selection process, and the position was filled by an individual not a member

2    of his class.  The City raises a number of arguments that seek to attack this prima facie

3    case, including the City's previous hiring of a male, various statements about Scalzi's

4    lower qualifications as against Lira, and his status as a finalist that demonstrates a lack

5    of discriminatory treatment.  Nevertheless, Scalzi satisfies the minimal showing required

6    at this stage of the Title VII analysis.

### 2.    Nondiscriminatory Justification

8         The City provides a number of legitimate nondiscriminatory reasons for their

9    decision not to hire Scalzi and their decision to terminate him.  First, the City provides

10   evidence demonstrating that City officials viewed Lira as more qualified than Scalzi for

11   the open position.  City Manager Rose testified that he chose Lira because of her strong

12   human resources experience in the public sector, her "maturity of outlook," and her non-

13   confrontational approach to collective bargaining.  (Dkt. no. 85-A at ¶ 7.)  With respect to

14   Scalzi's termination, the City provides ample evidence documenting Scalzi's poor

15   performance after Lira's hiring, including evaluations of an independent consultant, a

16   letter from the Teamsters Local describing his poor performance, and his failure to

17   acknowledge his "last chance" letter.  Thus, the presumption of unlawful discrimination

18   "simply drops out of the picture," *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511

19   (1993), and Scalzi must provide "specific, substantial evidence of pretext," *Wallis*, 26

20   F.3d at 890.

### 3.    Pretext

22        Scalzi brings no specific and substantial evidence of pretext to raise a genuine

23   issue of material fact.[2]  With respect to the City's failure to hire him for the Director

24

25        [2]The Court notes that this requirement applies to circumstantial evidence, not to
     direct evidence.  *See Dominguez-Curry*, 424 F.3d at 1038 (holding that specific and
26   substantial requirement does not apply where discrimination plaintiff brought forth direct
     evidence of discriminatory animus).  Scalzi's claim proceeds on the basis of
27   circumstantial evidence, as he does not present any direct evidence of gender-bias in
     favor of female City employees.

28

position, Scalzi alleges that Lira was unqualified for the position, and appends testimony from Assistant City Manager Samuel Chambers where Chambers describes how some of Lira's qualifications may be subjected to scrutiny.  Scalzi also offers testimony from Chambers where Chambers described Scalzi as a qualified employee prior to his termination and contesting claims made by the City about his unqualified conduct. Lastly, Scalzi lists in his briefings a number of accomplishments purportedly showing his strong employment record.

With respect to his failed application, Scalzi's pretext argument fails because he provides his own subjective assessment of the qualifications of the two final candidates. *See Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("[A]n employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact.").  Scalzi attempts to give his subjective opinion an air of objectivity by pointing to Chambers' testimony, but inadvertently does more to harm his case than support it.  While Chambers testified in his deposition that he believed Scalzi to be a strong labor relations manager (*see* dkt. no. 91 at 26-29), his arguments comparing himself to Lira only represent his own opinions as to the comparative qualifications of the two finalists.  Chambers did raise questions over Lira's qualifications when viewing, for the first time, additional evidence provided to him regarding the nature of Lira's previous employment.  (*See* dkt. no. 91 at 90:4-94:21.)  But even assuming the veracity of the claims made by Scalzi, merely because the interviewing panel (and, for that matter, the independent recruiting agency) failed to appreciate potential issues with Lira's qualifications does not establish discrimination.  Indeed, it does precisely the *opposite*: by Scalzi's logic, the City *thought* it was hiring a better candidate than it actually hired.  Were this an instance of discrimination, Chambers and his peers would have *known* that Lira was unqualified.  But this is not Scalzi's argument.[3]

---

[3]Scalzi alleges that the independent search firm indicated to Rose that Lira might not meet all of the requirements for the position, and alleges that Rose intentionally withheld his reservations about Lira's qualifications from others.  However, Scalzi fails to *(fn. cont…)*

1    Further, Scalzi fails to present any evidence to challenge the strong inferences of

2    nondiscrimination arising from the fact that the City had previously hired a male for

3    precisely this same position, or from the fact that Scalzi himself was given the position

4    on an interim basis, or from the additional fact that he received a beneficial

5    reclassification shortly after Lira's hiring.  *See Bradley*, 104 F.3d at 270-71 (holding that

6    "where the same actor is responsible for both the hiring and the firing of a discrimination

7    plaintiff, and both actions occur within a short period of time, a strong inference arises

8    that there was no discriminatory motive").  Scalzi is entitled to call the City's decision to

9    hire Lira a poor one, but the undisputed facts before the Court do not entitle him to a

10   judgment that declares the City's decision a discriminatory one.

11       Scalzi also challenges his termination, but again fails to raise a genuine issue of

12   material fact. He argues that he performed his job duties effectively, and appends

13   deposition testimony from Chambers corroborating his arguments.  However, he fails to

14   raise any question of discrimination, and fails to rebut the evidence provided by the City

15   of his unsatisfactory job performance.  Even were the Court to ignore the City's stated

16   reasons for termination, and to credit Scalzi as an effective Labor Relations Manager,

17   summary judgment for the City would still be appropriate. Scalzi was an at-will

18   employee, and the City's decision to terminate him was lawful in the absence of any

19   discrimination, which Scalzi cannot prove. Scalzi has not raised any specific or

20   substantial evidence of a pretext.  Therefore, the City's request for judgment on Scalzi's

21   Title VII is granted.

22       **B.    NRS § 281.641 Whistle Blower Claim**

23       Scalzi also alleges that his termination violated NRS § 281.641, which protects

24   state and local employees from adverse action resulting from their disclosure of improper

25   government action by establishing a process for hearing whistleblower claims.  Scalzi

26   _____

(…fn. cont.)

27   point the Court to any evidence supporting these assertions.  Even were they true, Scalzi
     does not connect these actions to any circumstantial evidence of discrimination.  Without

28   more, Scalzi's assertions in his briefings cannot create a genuine issue of fact.

argues that the City failed to establish this procedure in contravention of NRS § 281.641.

The statute provides that:

> 1.   A local government shall, by ordinance, establish procedures for hearing an appeal from a local governmental officer or employee who:
>
> > (a) Disclosed information concerning improper governmental action; and
> >
> > (b) Believes that as a result of that disclosure, a reprisal or retaliatory action has been taken against the local governmental officer or employee, to determine whether a reprisal or retaliatory action has been taken against the local governmental officer or employee. The procedures must allow a local governmental officer or employee to file an appeal not later than 2 years after the information is disclosed and require the local governmental officer or employee who desires to file an appeal to file the appeal within 60 days after the alleged reprisal or retaliatory action was taken against the local governmental officer or employee.
>
> 2.   An ordinance adopted pursuant to subsection 1 must:
>
> > (a) Prescribe the required contents of an appeal;
> >
> > (b) Provide for the designation or appointment of hearing officers to hear such appeals; and
> >
> > (c) Provide that if a hearing officer determines that the action taken was a reprisal or retaliatory action, the hearing officer may issue an order directing the proper person to desist and refrain from engaging in such action.

NRS § 281.641.   The statute does not provide, however, for a cause of action to challenge a city's failure to enact these procedures.   Scalzi only argues that the City's failure to comply with the statute provides this Court jurisdiction over his whistleblower claims.   However, the statute does not protect whistleblowing activity; it merely obliges local governments to create a process to hearing claims arising out of whistleblowing activity.   By the statute's own terms, Scalzi cannot vindicate any violations of his own rights relating to whistleblowing conduct via this statute.   Scalzi has consented to the dismissal of his retaliation claim, and has not raised a common law tort for retaliatory discharge.   *See Hansen v. Harrah's*, 675 P.2d 394, 396-97 (Nev. 1984) (recognizing retaliatory discharge tort); *Wiltsie v. Baby Grand Corp.*, 774 P.2d 432, 433 (Nev. 1989) (describing requirements for retaliatory discharge).

1    Even were the statute to provide a private right of action for an employee against

2    a municipality for failing to create these procedures, Scalzi presents no *evidence* that he

3    disclosed evidence of government misconduct or that he complained of adverse

4    employment conduct as a result of this whistleblowing activity to the City.  Simply put,

5    Scalzi offered no evidence that he was a whistleblower.  In the absence of any evidence

6    demonstrating that Scalzi initiated a whistleblowing claim against the City, the Court

7    cannot evaluate the City's adherence to the statute's requirements for a procedure to

8    hear such complaints.  Accordingly, no question of material fact exists for the jury on

9    Scalzi's NRS § 281.641 claim.

10    **C.    Breach of Duty of Loyalty Counterclaim**

11    Scalzi also seeks judgment on the City's counterclaim for Scalzi's breach of the

12    duty of loyalty.  Scalzi argues that Nevada law has not recognized a duty of loyalty for

13    management level employees and, even if it did, the City has not provided sufficient

14    evidence to raise a genuine issue of material fact on this counterclaim.  The City failed to

15    address its counterclaim in its Response to Scalzi's Motion.  The City's counterclaim

16    alleges that, among other actions, Scalzi took "privileged and private documents" for his

17    own personal use. (Dkt. no. 54 at 7.) The City fails to present any evidence

18    substantiating this claim, and fails to raise any other evidence demonstrating "intentional

19    misconduct, fraud or a knowing violation of the law."  *See In re Amerco Derivative Lit.*,

20    252 P.3d 681, 701 (Nev. 2011) (discussing requirements for demonstrating breach of

21    duty of loyalty by corporate director or officer).  In the absence of any argument as to

22    why the duty of loyalty applies to a public employee in Scalzi's position, and in the

23    absence of any genuine issue of material fact, Scalzi's request for summary judgment on

24    the City's counterclaim is granted.

25    **V.    CONCLUSION**

26    Scalzi's claims against the City fail for a simple lack of evidence sufficient to raise

27    genuine issues of material fact.  Without any circumstantial evidence of discrimination,

28    Scalzi cannot withstand the City's Motion for Summary Judgment on his state law

whistleblower and federal sex discrimination claims. Similarly, the City's failure to respond to or provide evidence or argument in support of its counterclaim necessitates granting in part Scalzi's Motion.

Accordingly, IT IS THEREFORE ORDERED that Defendant City of North Las Vegas' Motion for Summary Judgment (dkt. no. 84) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff Michael J. Scalzi's Motion for Summary Judgment (dkt. no. 87) is GRANTED in part and DENIED in part.

DATED THIS 26th day of February 2013.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE